

James L. Thomas, Clayton, Mo., for plaintiff.

Larry B. Luber, Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, Mo., for defendant.

## THE COURT'S FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF JUDGMENT

CAHILL, District Judge.

*Findings of Fact*

1. Plaintiff Dorothy Allen is a black female citizen of the United States presently residing in the City of St. Louis, Missouri.

2. Throughout plaintiff's employment, defendant Barnes Hospital was a Missouri not-for-profit corporation licensed as a general hospital by the State of Missouri with its principal place of business in the City of St. Louis, Missouri.

3. Defendant originally employed plaintiff in the Surgical Pathology and Citology Unit of its Laboratory Department in a position with the job title of Dictaphone Operator. In that classification her job duties included transcribing pathology protocols from Dictaphone equipment and manuscripts, typing, maintaining files, answering telephones, and performing clerical duties as assigned. On December 5, 1976, defendant changed plaintiff's job title to Transcriptionist. Her job duties remained essentially the same as they had been while she had the job title of Dictaphone Operator. Plaintiff continued as a Transcriptionist until her termination on November 27, 1979.

4. Dr. Michael Kyriakos supervised the overall operations of the Surgical Pathology Citology Unit in the defendant's Laboratory Department throughout plaintiff's employment. In addition, plaintiff served as Dr. Kyriakos' personal typist. Mrs. Annette Colbert, the chief secretary for the Surgical

**Dorothy ALLEN, Plaintiff,**

v.

**BARNES HOSPITAL, Defendant.**

**No. 80–1535C(4).**

United States District Court, E.D. Missouri, E.D.

May 24, 1983.

Pathology and Citology Unit, acted as the direct supervisor of the nonprofessional and nontechnical staff. As a transcriptionist, plaintiff came under Mrs. Colbert's direct supervision. Both Dr. Kyriakos and Mrs. Colbert assigned work to plaintiff. Dr. Kyriakos completed the annual performance evaluations of plaintiff and imposed disciplinary actions against her. In so doing he relied upon both his own observations of plaintiff's job performance and those of Mrs. Colbert.

5. On November 27, 1979, Ms. Chamberlain informed Dr. Kyriakos that she desired to have plaintiff answer the telephones that day. She explained that the absence of one of the clerks who usually worked in the front office because of illness prompted her desire to use plaintiff in that capacity. Dr. Kyriakos consented to Ms. Chamberlain's assigning of plaintiff to answer the telephones. When she asked plaintiff to answer the telephones for that day plaintiff replied that she only assisted in answering the telephone and would talk to Dr. Kyriakos about that assignment. Plaintiff neither answered the telephone as directed nor talked to Dr. Kyriakos.

6. Ms. Chamberlain informed Dr. Kyriakos that plaintiff had refused to answer the telephones. Dr. Kyriakos called plaintiff into his office to ask her why she would not answer the telephones. Plaintiff replied that she had not been hired to answer the telephones and that Mrs. Jarmon, a general office clerk, could handle both typing and answering the telephones. Plaintiff further complained that she never received help from other employees when she needed it. She, however, admitted that she had never asked for such help. Dr. Kyriakos told plaintiff that she was under the direction of Ms. Chamberlain and would have to follow her instructions. He reminded her that her job responsibilities included answering the telephone. Dr. Kyriakos informed plaintiff that if she did not want to answer the telephones she left him no choice but to dismiss her. Dr. Kyriakos then asked plaintiff if she still wanted her job. Plaintiff replied that she had held her job for five years and would remain until

dismissed. Dr. Kyriakos responded that he would have to let plaintiff go. Plaintiff said that was fine and that she would sign any necessary papers to accomplish her dismissal. Plaintiff then left Dr. Kyriakos' office.

7. Plaintiff returned to Dr. Kyriakos' office a few minutes later and asked him for a dismissal letter. He told her to see Helen Morgan, defendant's Administrative Assistant. Plaintiff went to Ms. Morgan's office and she told plaintiff to see Gregory Webb, defendant's Technical Director of the Laboratories. Plaintiff then visited Mr. Webb's office. She told him that she wanted a letter indicating that defendant had terminated her employment and that she had not deserted her job. Plaintiff told Mr. Webb that she wanted the letter to use in connection with her application for unemployment compensation benefits. He gave her a hand-written note stating that Dr. Kyriakos had terminated plaintiff as of November 27, 1979.

8. Plaintiff called Mr. Webb the following day, November 28, 1979. He informed her that defendant's Medical Record Services had ongoing vacancies for Transcriptionists and that he had discussed such vacancies with Richard Spencer, the Director of Medical Record Services. Mr. Webb told plaintiff that Mr. Spencer expressed an interest in interviewing plaintiff for a Transcriptionist position. Plaintiff responded that she would contact Mr. Spencer. Mr. Webb indicated that he would delay the processing of plaintiff's termination paperwork pending her discussion with Mr. Spencer.

9. Plaintiff then called Mr. Spencer on the telephone and expressed her desire to interview with him for a Transcriptionist position. Mr. Spencer invited plaintiff to meet with him and to demonstrate her ability on one of the dictating systems used in his department. Plaintiff responded affirmatively to Mr. Spencer's invitation and made an appointment for Friday, November 30, 1979 at 10:00 a.m.

10. On November 29, 1979, plaintiff called both Mr. Spencer and Mr. Webb on the telephone. She informed both of them that she had decided not to interview for the Transcriptionist position in Medical Record Services. Accordingly, Mr. Webb completed the processing of plaintiff's termination paperwork.

11. Defendant did not hire a new employee to replace plaintiff in Surgical Pathology and Citology. Krystal Rogers, a black female clerical employee, assumed the duties previously performed by plaintiff. Defendant had hired Ms. Rogers several weeks before plaintiff's termination.

12. Defendant paid plaintiff in accordance with its pay scale for Transcriptionists. Throughout her employment plaintiff received regular hourly wage increases. Following her wage adjustment made on December 31, 1978, plaintiff reached the top of the pay scale for transcriptionists. The following schedule indicates plaintiff's wage progression throughout her employment:

| Effective Date | Hourly Wage | Job Title |
| --- | --- | --- |
| 9/16/75 | $3.57 | Dictaphone Operator |
| 1/4/76 | 3.89 | " " |
| 9/12/76 | 4.11 | " " |
| 12/5/76 | 4.37 | Transcriptionist |
| 9/11/77 | 4.65 | " |
| 12/18/77 | 4.98 | " |
| 8/27/78 | 5.28 | " |
| 12/31/78 | 5.36* | " |
| 9/23/79 | 5.74* | " |

* Top of pay scale for Transcriptionist job classification.

### Conclusions of Law

1. This Court has jurisdiction over the parties and subject matter of this lawsuit under 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"), 42 U.S.C. § 1981, 28 U.S.C. § 1331, and 28 U.S.C. § 1334.

2. Plaintiff has not established a prima facie case of racial discrimination under Title VII, 42 U.S.C. § 2000e–5 (1976). Plaintiff has not proven that defendant denied her equal pay, promotional opportunities, and training. In addition, plaintiff has not produced evidence that demonstrates defendant dismissed her because of her race.

3. Even if plaintiff had established a prima facie case under Title VII, defendant has proven by a preponderance of the evidence that plaintiff's race played no factor in her pay, promotional opportunities, training or dismissal. Throughout her employment, defendant paid plaintiff in accordance with its pay scale in effect for all Transcriptionists. Defendant lawfully dismissed plaintiff because of her insubordination in refusing to answer the telephones as directed by her supervisor. The termination of plaintiff's employment, moreover, occurred a little more than one month after she had completed a probationary period imposed as discipline because of her poor job performance. Thus, plaintiff's race played no role in defendant's treatment of her.

4. Plaintiff has not established a prima facie case of racial discrimination under 42 U.S.C. § 1981. Plaintiff proved no discrimination against her by defendant regarding her pay, promotional opportunities, training or dismissal.

5. Even if plaintiff had established a prima facie case under 42 U.S.C. § 1981, defendant has proven by a preponderance of the evidence that racial discrimination played no role in plaintiff's pay, promotional opportunities, training, or dismissal. The reasons stated above in paragraph 3 with respect to Title VII also apply to plaintiff's allegations under 42 U.S.C. § 1981.

### Judgment

Therefore, this Court ORDERS, ADJUDGES, and DECREES that defendant have judgment entered in its favor and against plaintiff with court costs taxed against plaintiff. The Court DENIES defendant's request for attorney's fees and expenses.

The Court compliments court-appointed counsel for exemplary services.